NELSON MULLINS RILEY & SCARBOROUGH LLP
RYAN E. COSGROVE, State Bar No. 277907
*ryan.cosgrove@nelsonmullins.com*
19191 South Vermont Avenue, Suite 900
Torrance, CA  90502
Telephone: 424.221.7400
Facsimile: 424.221.7499

Attorney for Defendants
TYCO FIRE PRODUCTS LP and
CHEMGUARD, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA and THE CITY OF SAN DIEGO,<br><br>Plaintiffs,<br><br>v.<br><br>3M COMPANY, et al.,<br><br>Defendants. | Case No.  **'22CV1013 CAB MSB**<br><br>**TYCO FIRE PRODUCTS LP AND CHEMGUARD, INC.'S NOTICE OF REMOVAL**<br><br>**JURY TRIAL DEMANDED** |

Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless identified individually by full name), by and through undersigned counsel, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Superior Court of the State of California, for the County of San Diego, to the United States District Court for the Southern District of California.  As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

### PRELIMINARY STATEMENT

1. The People of the State of California (the "People"), acting by and through San Diego City Attorney Mara W. Elliott, and the City of San Diego (the

"City" and, together with the People, "Plaintiffs"), seek to hold Tyco and certain other Defendants liable based on their alleged conduct in designing, manufacturing, marketing, distributing, and/or selling aqueous film-forming foam ("AFFF") that Plaintiffs allege was used for fire protection, training, and response activities in and around San Diego, thereby resulting in contamination of its of its water supplies, water infrastructure, and other resources and properties.

2.      Specifically, Plaintiffs allege that Defendants' AFFF products contained per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanesulfonic acid ("PFOS") and/or perfluorooctanoic acid ("PFOA") and/or their chemical precursors, and that the use of these products has caused contamination and pollution of natural resources located in and around San Diego, including municipal drinking water supplies, as well as municipal stormwater, wastewater, and other water systems.

3.      At least some of the AFFF that gives rise to Plaintiffs' claims has been manufactured by a select group of suppliers (including Tyco) in accordance with the military's rigorous specifications ("MilSpec AFFF"). AFFF used at military facilities and larger civilian airports ("Part 139" airports) is required to be MilSpec AFFF. The PFAS contamination for which Plaintiffs seek recovery in this case has been caused at least in part by the use of MilSpec AFFF (including MilSpec AFFF manufactured by Tyco) at military bases, including the Naval Air Station North Island, Naval Base Point Loma, Camp Pendleton, Naval Base Coronado, and at Part 139 airports, including the San Diego International Airport. (Compl. ¶ 208). Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Tyco is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442, Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through

contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

4. This action was filed on May 11, 2022, in the Superior Court of the State of California, for the County of San Diego, bearing Case No. 37-2022-00017958. (Ex. A, Complaint). Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(d) and 1441(a) because the Superior Court of the State of California, for the County of San Diego, is located within the Southern District of California.

5. Tyco Fire Products LP accepted service of the Complaint on June 14, 2022 and Chemguard Inc. accepted service of the Complaint on June 15, 2022. Removal is timely under § 1446(b)(1).

6. Tyco is not required to notify or obtain the consent of any other Defendant in this action to remove this action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

7. Plaintiffs generally allege that Defendants, including Tyco, designed, manufactured, marketed, distributed, and/or sold AFFF that contained PFAS, including PFOS and/or PFOA and/or their chemical precursors. (Compl. ¶¶ 7, 18). The City "owns and operates drinking water systems, water treatment systems, and water delivery systems, as well as large municipal stormwater and wastewater systems." (*Id.* ¶ 35). Plaintiffs allege that Defendants' AFFF was "used, stored, handled, released, and disposed of within San Diego and/or in the vicinity of the City's resources, including its drinking water supplies, wastewater treatment works, stormwater conveyance system, surface waterbodies, and other natural resources." (*Id.* ¶ 25).

8. The City seeks damages incurred for the "the investigation, assessment, monitoring, analysis, remediation, treatment, removal, disposal, or other past, current, or future action or response, including efforts to protect such resources and properties from future injury and to compensate for the loss of use of such resources and properties, relating to the actual or potential presence of PFAS compounds in such resources and properties" allegedly caused by the use of Defendants' products. (*Id.* ¶ 15; Prayer for Relief at 48). The People seek an order requiring Defendants to abate the alleged public nuisance pursuant to Cal. Civ. Proc. § 731. (*Id.* ¶¶ 14, 29; Prayer for Relief at 48). Plaintiffs also seek other unspecified damages, restitution, injunctive relief, punitive damages, and attorneys' fees and costs. (*Id.* ¶ 28; Prayer for Relief at 48).

9. The People assert a claim against all Defendants for public nuisance – abatement, pursuant to Cal. Civ. Proc. § 731. (*Id.* ¶¶ 235–255). The City asserts claims against all Defendants for public nuisance – damages, pursuant to 8   Cal. Civ. Proc § 731 (*id.* ¶¶ 256–277), defective design (*id.* ¶¶ 278–296), failure to warn (*id.* ¶¶ 297–315), trespass (*id.* ¶¶ 316–324), and negligence (*id.* ¶¶ 325–335).

10. Pursuant to 28 U.S.C. § 1446(d), Tyco is serving a copy of this Notice of Removal upon all other parties to this case and filing a copy with the Clerk of the Superior Court of the State of California, for the County of San Diego.

11. By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

12. Tyco reserves the right to amend or supplement this Notice of Removal.

/ / /

/ / /

/ / /

/ / /

## **REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442**

13. Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its actions taken pursuant to a federal officer's direction have a causal nexus with plaintiff's claims or injuries or are otherwise related to the lawsuit; and (d) it can assert a "colorable" federal defense. *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017); *cf. Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Papp*, 842 F.3d at 812; *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Hilbert v. McDonnell Douglas Corp.*, 529 F.Supp.2d 187, 196 (D. Mass. 2008); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

14. Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

-5-
TYCO FIRE PRODUCTS LP AND CHEMGUARD, INC.'S NOTICE OF REMOVAL

15. All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiffs' injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against Tyco and other manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and other manufacturers of MilSpec AFFF). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused, at least in part, by MilSpec AFFF. *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

### A. MilSpec AFFF

16. Since the 1960s, the United States military has used MilSpec AFFF on military bases, airfields (including Air National Guard facilities), and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.

Naval Research Laboratory developed AFFF in response to catastrophic fires aboard the aircraft carriers *USS Forrestal* in 1967 and *USS Enterprise* in 1969.[2] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

17. The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4] All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6] Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

---

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6] *Id.*

18. From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here. This requirement has been in force for virtually the entire time period at issue in the Complaint. In 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term." PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

19. The San Diego International Airport and multiple military bases, including the Naval Air Station North Island, Naval Base Point Loma, Camp Pendleton, Naval Base Coronado, are sources of the PFAS contamination that has allegedly caused Plaintiffs' injuries. (Compl. ¶ 208). Those sites are, and have long been, required to use MilSpec AFFF for their firefighting activities.

**B. <u>All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied</u>**

  1. <u>*The "Person" Requirement Is Satisfied*</u>

20. The first requirement for removal under the federal officer removal statute is satisfied here because Tyco (a limited partnership) and Chemguard and 3M (corporations) meet the definition of "persons" under the statute. For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

  2. <u>*The "Acting Under" Requirement Is Satisfied*</u>

21. The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. The phrase "acting under" is to be "liberally construed in favor of

the entity seeking removal." *Sawyer*, 860 F.3d at 255 (internal quotation marks omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813. Rather, "courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government.*" *Sawyer*, 860 F.3d at 255 (emphasis in original).

22. The requirement of "acting under" federal office is met here because the effect of Plaintiffs' claims, at least in part, is to challenge Tyco's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[7] Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply AFFF. *See Chemguard*, 2021 WL 744683, at *3 (holding that Tyco and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5;

---

[7] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

MDL Order 3, at 3–6 (same).  If Tyco and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

23. In designing, manufacturing and supplying the MilSpec AFFF at issue, Tyco acted under the direction and control of one or more federal officers. Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[8]

### 3. *The Nexus Requirement Is Satisfied*

24. The third requirement, that the defendant's actions taken under color of federal office have a causal nexus with plaintiff's claims or injuries or be otherwise related to the lawsuit, erects a hurdle that "is quite low."  *Isaacson*, 517 F.3d at 137.[9] To show the required nexus, it is sufficient for a defendant to establish a connection or association between the lawsuit and the federal office.  *Sawyer*, 860 F.3d at 258.

25. Here, Plaintiffs' claims arise at least in part from Tyco's production and sale of AFFF manufactured to military specifications.  Plaintiffs allege that the use of PFAS in AFFF is a source of its injuries.  Tyco contends that the use of such chemicals in MilSpec AFFF was required by military specifications.  The conflict is apparent: MilSpec AFFF was developed by Tyco and other manufacturers to meet specifications established by the DoD.  The design choices Plaintiffs are attempting to impose via state tort law would create a conflict in which Tyco could not comply

---

[8] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

[9] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

with both the MilSpec and the purported state-prescribed duty of care. *See Boyle*, 487 U.S. at 509; *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'causal connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1 at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2 at 5 (finding the causation element of federal officer removal satisfied where Tyco and Chemguard's AFFF products, "for which the military imposes MilSpec standards," were used at several Part 139 airports); MDL Order 3 at 5–6 (same as to MilSpec AFFF used at a single airport).

26. Here, Plaintiffs' purported injuries arise at least in part from MilSpec AFFF. The causal connection or relationship between Plaintiffs' alleged injuries and Tyco's actions under color of federal office is clear. It is irrelevant that the Complaint does not expressly contend that Plaintiffs have been injured by MilSpec AFFF. Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Chemguard*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4. The "Colorable Federal Defense" Requirement Is Satisfied

27. The fourth requirement ("colorable federal defense") is satisfied by Tyco's assertion of the government contractor defense.

28. At the removal stage, a defendant need only show that its government contractor defense is colorable, *Sawyer*, 860 F.3d at 254; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,'

the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) (upon removal, defendant must raise "colorable federal defense"). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116.[10] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

29. Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

30. Tyco has satisfied these elements for purposes of removal. As discussed above, Naval Sea Systems Command approved reasonably precise specifications governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Tyco's products appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first

---

[10] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("There is also colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4 (same, as to Tyco and Chemguard); MDL Order 3, at 5 (same); *see also Chemguard*, 2021 WL 744683, at *4.

31. Moreover, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[11] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[12] By no later than

---

[11] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002) (excerpt).

[12] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980),

2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent." In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[13] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and it recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[14]  *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

32.   At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation

---

https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[13] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[14]   MIL-PRF-24385F(3) § 6.6 & Tables 1, 3 (2019), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

33.  Tyco's use of PFAS in MilSpec AFFF was required by military specifications.  By seeking to impose tort liability on Tyco for alleged injuries to Plaintiffs that were caused in whole or in part by their compliance with military specifications, Plaintiffs are attempting to use state tort law to attack design choices dictated by the military.  The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

* * *

WHEREFORE, Tyco hereby removes this action from the from the Superior Court of the State of California, for the County of San Diego, to the United States District Court for the Southern District of California.

DATED: July 13, 2022

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: _____/s/ *Ryan E. Cosgrove*_____
RYAN E. COSGROVE
Attorney for Defendants
TYCO FIRE PRODUCTS LP and CHEMGUARD, INC.

# **CERTIFICATE OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 19191 South Vermont Avenue, Suite 900, Torrance, CA 90502. On the date set forth below, I served the within document:

**TYCO FIRE PRODUCTS LP AND CHEMGUARD, INC.'S NOTICE OF REMOVAL; JURY TRIAL DEMANDED**

☐ ELECTRONIC - by transmitting via email the document(s) listed above to the email address(es) set forth on the attached service list on this date before 5:00 p.m.

☒ MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

| | |
|---|---|
| Mara W. Elliott<br>Mark Ankcorn<br>Julie Rau<br>Office of the City Attorney<br>1200 3rd Ave, Suite 1100<br>San Diego, CA 92101<br>Tel: (619) 236-6220<br>Email: mankorn@sandiego.gov<br>          jrau@sandiego.gov<br>*Attorneys for Plaintiff* | The Chemours Company FC, LLC<br>1007 Market Street<br>Wilmington, DE 19899<br><br>ChemDesign Products, Inc.<br>2 Stanton Street<br>Marinette, WI 54143<br><br>Chemicals Inc.<br>12321 Hatcherville Road<br>Baytown, TX 77521 |
| Gary A. Praglin<br>Julie L. Fieber<br>Kelly W. Weil<br>Theresa E. Vitale<br>Cotchett, Pitre & McCarthy, LLP<br>2716 Ocean Park Blvd., Ste. 3088<br>Santa Monica, CA 90405<br>*Attorneys for Plaintiff* | Clariant Corporation<br>4000 Monroe Road<br>Charlotte, NC 28205<br><br>Corteva, Inc.<br>974 Centre Road<br>Bldg 735<br>Wilmington, DE 19805 |
| Kyle J. McGee<br>Viola Vetter<br>Suzanne Sangree<br>Jason H. Wilson<br>Grant & Eisenhofer P.A.<br>123 Justison Street<br>Wilmington, Delaware 19801<br>*Attorneys for Plaintiff* | Deepwater Chemicals, Inc.<br>196122 E County Road 40<br>Woodward, OK 73801 |

| | | |
|---|---|---|
| 1 | David S. Casey, Jr. | DuPont de Nemours, Inc. |
| | Gayle M. Blatt | 974 Centre Road, Building 730 |
| 2 | P. Camille Guerra | Wilmington, DE 19805 |
| 3 | Samantha Kaplan | |
| | Casey Gerry Schenk Francavilla Blatt & | Carrier Global Corporation |
| 4 | Penfield, LLC | 13995 Pasteur Boulevard |
| | 110 Laurel Street | Palm Beach Gardens, FL 33418 |
| 5 | San Diego, CA 92101 | |
| | *Attorneys for Plaintiff* | Dynax Corporation |
| 6 | | 79 Westchester Avenue |
| 7 | 3M Company | Pound Ridge, NY 10576 |
| | 3M Center | |
| 8 | Bldg 220-9E-02 | Kidde PLC, Inc. |
| | Saint Paul, MN 55144-1000 | 9 Farm Springs Road |
| 9 | | Farmington, CT 06032 |
| | E.I. Du Pont De Nemours Company | |
| 10 | 974 Centre Road | Raytheon Technologies Corporation |
| 11 | Wilmington, DE 19805 | f/k/a United Technologies Corporation |
| | | 870 Winter Street |
| 12 | The Chemours Company | Waltham, MA 02451 |
| | 1007 Market Street | |
| 13 | P.O. Box 2047 | BASF Corporation |
| | Wilmington, DE 19899 | 100 Park Avenue |
| 14 | | Florham Park, NJ 07932 |
| 15 | Kidde-Fenwal, Inc. | |
| | 400 Main Street | UTC Fire & Security Americas |
| 16 | Ashland, MA 01721 | Corporation, Inc. |
| | | 13995 Pasteur Blvd. |
| 17 | National Foam Inc. | Palm Beach Gardens, FL 33418 |
| | 141 Junny Road | |
| 18 | Angier, NC 27501 | |
| 19 | | |
| | Buckeye Fire Equipment Company | |
| 20 | 110 Kings Road | |
| | Kings Mountain, NC 28086 | |
| 21 | | |
| 22 | AGC Chemicals Americas, Inc. | |
| | 55 E. Uwchlan Avenue, Suite 201 | |
| 23 | Exton, PA 19341 | |
| | Archroma U.S., Inc. | |
| 24 | 5435 77 Center Dr., #10 | |
| | Charlotte, NC 28217 | |
| 25 | | |
| 26 | Arkema Inc. | |
| | 900 First Avenue | |
| 27 | King of Prussia, PA 19406 | |
| 28 | | |

-17-
TYCO FIRE PRODUCTS LP AND CHEMGUARD, INC.'S NOTICE OF REMOVAL

1  I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on **July 13, 2022**, at Torrance, California.

_____
Judy Carter